IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Lundergan; Darlene Lundergan, individually and as guardians and conservators of Michael Lundergan, an incapacitated adult,<br><br>    Plaintiffs,<br><br>vs.<br><br>State of Arizona;; Arizona Department of Economic Security, a political subdivision; Arizona Health Care Cost Containment System Administration, a political subdivision,<br><br>    Defendants. | No. 10-CV-1211-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff's Emergency Motion for Temporary Restraining Order and Stay of Administrative Decision. (Dkt. # 2.) For the following reasons, the Court denies the Motion without prejudice.

The Complaint alleges the following facts. Plaintiffs Robert Lundergan and Darlene Lundergan are the legal guardians and conservators of Michael Lundergan, an incapacitated adult. Michael was born with multiple health problems, requiring extensive treatment. Michael's treatment has generally included in-home nursing care provided 24 hours per day and 365 days per year.

As a result of a settlement in a prior case, the Lundergans received payments through

Arizona's Benefits Option program from the Arizona Department of Administration ("ADOA"). In July 2007, however, the ADOA informed the Lundergans that it would stop making health care payments and that Michael's future care needs would be met by the Lundergans' health plan vendor, United HealthCare Insurance Company ("United").[1] In August 2007, the ADOA and United informed the Lundergans that Michael's care would be reduced from 24 hours per day to 2 hours per day.

The Lundergans then filed a complaint on Michael's behalf in Pima County Superior Court seeking to enjoin the State of Arizona, United, and the ADOA to provide 24-hour care. In March 2008, the parties reached a settlement agreement, which guaranteed Michael 24-hour care through a newly-retained third-party nursing care provider, AristoCare. Under the agreement, the defendants in that action agreed to make distributions to AristoCare to fund Michael's ongoing care.

In July 2009, however, the ADOA informed the Lundergans that United would no longer serve as the plan administrator and that Michael would be allotted only 168 hours of home healthcare service per year. The Lundergans were then given an option to choose a 168-hour plan during the open enrollment period. In August, the ADOA partially recanted, stating that United would continue to provide one of the medical plan options and that United would help the Lundergans find alternatives for Michael's care. Despite this promise, the Complaint alleges that the Lundergans never received any assistance and that Michael's care was reduced in violation of the settlement agreement reached in March 2008.

In September 2009, the Lundergans filed a complaint in Pima County Superior Court against the State of Arizona, United, and ADOA, requesting a temporary restraining order ("TRO") enjoining defendants from reducing Michael's benefits. The State removed the case to Maricopa County Superior Court. While Judge Trujillo granted the request for a TRO, the case was transferred to Judge Ronan, who, after an evidentiary hearing, denied the request

---

[1] Arizona contracted with United to serve as a third party administrator to administer health benefits available under Arizona's Benefits Option self-insurance program.

for a preliminary injunction in March 2010. The Lundergans then filed a Petition for Special Action with the Arizona Court of Appeals, which accepted jurisdiction and affirmed Judge Ronan's denial of the request for a preliminary injunction.

In addition to the payments sought through United and the ADOA, it appears that the Lundergans also had been receiving payment from the Arizona Department of Economic Security's Division of Developmental Disabilities ("DES/DDD"). DES/DDD had provided the Lundergans with funding to receive 257.3 hours of nursing per month, or a little more than 8 hours per day. In April 2010, DES/DDD then concluded that Michael qualified for a Level 2 medical rate, which authorized DES/DDD to provide Michael with 8 hours per day of nursing care and 12 hours per day of attendant care. The Lundergans responded that the offer was insufficient and sought an expedited appeal of the decision. This request for an expedited appeal was denied. Although DES/DDD later determined that Michael qualified for a Level 3 service rate, which is the highest level of home and community based service ("HCBS") provided, the Lundergans still requested 24-hour in-home care. The request was denied because it was not cost-effective or federally-reimbursable. The Lundergans requested that DES/DDD provide them with an expedited state fair hearing, but DES/DDD set the hearing for approximately four weeks from now.

The Lundergans then filed this case, seeking injunctive relief, as well as fees and costs. The Lundergans raise two claims: (1) violation of Title XIX of the Social Security Act ("Medicaid Act"), 42 U.S.C. § 1396, *et seq.*, and (2) violation of 42 U.S.C. § 1983.

**DISCUSSION**

"The standard for issuing a [temporary restraining order] is the same as that for issuing a preliminary injunction." *Phillips v. Fremont Inv. & Loan*, 2009 WL 4898259 at *1 (D. Ariz. Dec. 11, 2009) (citing *Brown Jordan Int'l, Inc. v. The Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2007)). Therefore, a district court may grant a preliminary injunction or temporary restraining order under two sets of circumstances. *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009). Under the traditional criteria, a plaintiff must demonstrate: "(1) a strong likelihood of success on the merits, (2) the

possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Id.* (internal quotations omitted). Alternatively, a temporary restraining order or preliminary injunction is appropriate "if the plaintiff demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of the hardships tips sharply in [its] favor." *Id.* (internal quotations omitted). While a showing of serious questions on the merits is a lower standard than showing probable success, Plaintiffs nonetheless must demonstrate at least a "fair chance of success." *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987).

Plaintiffs' Motion for TRO does not explain how they have either demonstrated probable success on the merits or raised serious questions on the merits. The majority of the Motion recites various facts alleged in the Complaint, but the Motion lacks both meaningful analysis and citation to authority.

### A.  42 U.S.C. § 1396, *et seq.*

The Complaint alleges a violation of the Medicaid Act, 42 U.S.C. § 1396, *et seq.*, which governs grants to states for medical assistance programs. This claim challenges only the sufficiency of the benefits received from DES/DDD, which distribute state funding for Arizona Health Care Cost Containment System ("AHCCCS"), Arizona's Medicaid system. While states opting to participate in Medicaid programs must follow appropriate federal statutes and regulations, *see J.K. By & Through R.K. v. Dillenberg*, 836 F. Supp. 694, 696 (D. Ariz. 1993), Plaintiffs have not explained what *specific* statutes or regulations Defendants have violated by declining to provide Michael with 24-hour in-home care.

The Complaint correctly notes that the goal of the Medicaid Act is to "enabl[e] each State, as far as practicable . . . to furnish . . . medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services." *AlohaCare v. Haw. Dep't of Human Servs.*, 572 F.3d 740, 742 (9th Cir. 2009) (quoting 42 U.S.C. § 1396-1).

Specifically, the Complaint cites 42 C.F.R. § 440.230(b), which states, "Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose." Plaintiffs, however, do not explain how receiving the maximum HCBS benefits that DES/DDD can provide is a violation of this sufficiency requirement.

"Medicaid programs do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs." *Alexander v. Choate*, 469 U.S. 287, 303 (1985). The Medicaid Act gives states like Arizona "substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in 'the best interest of recipients.'" *Id.* (quoting 42 U.S.C. § 1396a(a)(19)); *see also Parry By and Through Parry v. Crawford*, 990 F. Supp. 1250, 1257 (D. Nev. 1998) (explaining that states have "great flexibility" under 42 C.F.R. § 440.230(b) "to determine the scope and duration" of state-funded treatment for individuals); *Callen v. Rogers*, 216 Ariz. 499, 503 (Ct. App. 2007) (explaining that the Medicaid Act "does not require that the 'medical assistance' be provided to the extent needed by every individual recipient of benefits," but rather that states have the discretion "to place usage limitations on the assistance even if the limitations are inconsistent with an individual recipient's personal medical needs") (citing 42 C.F.R. § 440.230(d) (permitting state plans to impose coverage limitations based on medical necessity and utilization review)).

For example, in *Alexander*, the Supreme Court held that Tennessee's Medicaid plan could limit inpatient hospital stays to fourteen days, despite the Medicaid Act's requirement that states cover inpatient hospital services. 468 U.S. at 309. While Tennessee's plan would not provide care for certain individuals requiring extended hospital stays, the Medicaid Act does not require that a state plan meet each individual's needs as long as the general application of services offered meets the goals and regulations of the Medicaid Act. *Id.* at 303. In the present case, Defendants have declined to offer Michael DES/DDD benefits that would fund 24-hour per day in-home care. Plaintiffs do not explain, however, why this decision violates the Medicaid Act. Nor do Plaintiffs explain how their Medicaid Act claim is anything other than a request for *individual* health care benefits for Michael, as opposed

to an argument that AHCCCS as a whole has failed to provide sufficient care.[2]

Moreover, the federal government has granted the State of Arizona the authority to provide HCBS in an amount "that does not exceed the cost of providing care to the eligible individual in an institutional setting." The Demonstration Project, *available at* azahcccs.gov/reporting/Downloads/AZ1115Waiver_6-22-09.pdf. Under this authority granted by the Demonstration Project, the State of Arizona has the discretion to cap the benefits that individuals like Michael can receive for in-home care. At the TRO hearing, Defendants' counsel explained that Defendants had already offered Michael the maximum amount allowed by the Demonstration Project. It further appears that Defendants have offered to provide Michael with group home care, where Michael would be able to receive care 24-hours per day; apparently, Plaintiffs have rejected this offer. Plaintiffs do not explain how, given the Demonstration Project as governed by existing federal and state law, Defendants' refusal to provide 24-hour in-home care is a violation of the Medicaid Act. Defendants have still offered the maximum allowable under the Demonstration Project and have offered an alternative under which Michael would receive 24-hour care. Thus, to the extent Plaintiffs request that Defendants provide services the cost of which exceed the cost of institutional care, Plaintiffs' request does not appear to be supported by the Medicaid Act.

This argument is echoed by the Arizona Administrative Code, which provides that services are covered if they are "medically necessary, cost effective, and federally reimbursable." Ariz. Admin. Code § R9-28-201(1). Again, while Plaintiffs contend that 24-hour care is medically necessary, they do not explain how such services are either cost-effective or federally-reimbursable under state or federal law.

Plaintiff has not explained

---

[2] At the TRO hearing, Plaintiffs' counsel cited *V.L. v. Wagner*, 669 F. Supp.2d 1106 (N.D. Cal. 2009), which held that California's reduction of in-home care services for 97,000 recipients violated the Medicaid Act's sufficiency requirement. Not only was *V.L.* decided on other grounds as well, but also *V.L.* challenged an overall policy reduction for in-home care, rather than a challenge to limits on services provided to a single individual.

**B.     42 U.S.C. § 1983**

Plaintiff also alleges a claim based on 42 U.S.C. § 1983, which provides a cause of action for a plaintiff who was deprived of a right secured by the Constitution or laws of the United States by those acting under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (citing 42 U.S.C. § 1983).  Neither the Complaint nor the Motion explains what, if any, federal rights were violated.  To the extent Plaintiffs allege a § 1983 claim as a vehicle to bring a claim for a violation of the Medicaid Act, this claim fails as Plaintiffs have not raised serious questions on the merits of a Medicaid Act claim.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for a Temporary Restraining Order and Stay of Administrative Decision (Dkt. # 2) is **DENIED WITHOUT PREJUDICE**.

**DATED** this 11th day of June, 2010.

_____
G. Murray Snow
United States District Judge