**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Lundergan and Darlene Lundergan, individually and as guardians and conservators of Michael Lundergan, an incapacitated adult,<br><br>Plaintiffs,<br><br>vs.<br><br>State of Arizona; Arizona Department of Economic Security, a political subdivision; Arizona Health Care Cost Containment System Administration, a political subdivision,<br><br>Defendants. | No. CV-10-1211-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Plaintiffs' Amended Motion for Temporary Restraining Order ("TRO") and Stay of Administrative Decision (Doc. 17) and Defendants' Motion to Dismiss (Doc. 11).[1] For the following reasons, the Court denies the Motion for Preliminary Injunction, stays the action pending completion of state administrative proceedings, and grants the Motion to Dismiss in part and denies it in part.

---

[1] Defendant Arizona Health Care Cost Containment System Administration filed the Motion to Dismiss. The Arizona Department of Economic Security later joined the Motion. (Doc. 16).

**BACKGROUND**

Plaintiffs Robert Lundergan and Darlene Lundergan ("Plaintiffs" or "the Lundergans") are the legal guardians and conservators of Michael Lundergan ("Michael"), an incapacitated adult. The Complaint alleges that Michael has suffered from health problems since birth, requiring extensive medical treatment. Michael's treatment has generally included in-home nursing care provided 24-hours per day, seven-days per week.

Because Robert Lundergan is an employee of the state, Michael's medical care had been funded by payments through the state health care benefits system operated by the Arizona Department of Administration ("ADOA"). These payments resulted from a prior settlement agreement with the Lundergans. In July 2007, however, the ADOA stopped making health care payments for Michael and informed the Lundergans that United HealthCare Insurance Company ("United") would begin covering Michael's health care needs.[2] In August 2007, the ADOA and United reduced Michael's covered nursing care to two hours per day. After the Lundergans sued to require the coverage for 24-hour care, the parties reached a settlement agreement in March 2008, in which Michael would receive 24-hour care through a newly-retained third-party nursing care provider, AristoCare. Under the agreement, the defendants in that action agreed to make distributions to AristoCare to fund Michael's ongoing care.

In July 2009, however, the ADOA informed the Lundergans that United would no longer serve as the plan administrator and that Michael would be allotted only 168 hours of home healthcare service per year. The Lundergans were then given an option to choose a 168-hour plan during the open enrollment period. In August, the ADOA partially recanted, stating that United would help the Lundergans find alternatives for Michael's care. Despite this promise, the Complaint alleges that the Lundergans never received any assistance and that Michael's care was reduced in violation of the settlement agreement reached in March

---

[2] Arizona contracted with United to serve as a third-party administrator to administer health benefits available under Arizona's Benefits Option self-insurance program.

2008.

In September 2009, the Lundergans filed a complaint in Pima County Superior Court against the State of Arizona, United, and ADOA, requesting a temporary restraining order ("TRO") enjoining the defendants from reducing Michael's benefits. The state-court complaint apparently alleged that the defendants had breached the March 2008 settlement agreement. The State transferred the case to Maricopa County Superior Court, where the Lundergans' request for a TRO and preliminary injunction were denied. The Lundergans then filed a Petition for Special Action with the Arizona Court of Appeals, which accepted jurisdiction and affirmed.

In addition to the payments sought through United and the ADOA, the Lundergans also had been receiving payments from the Arizona Department of Economic Security's Division of Developmental Disabilities ("DES/DDD") due to Michael's eligibility for certain Medicaid benefits. DES/DDD had provided the Lundergans with funding for Michael to receive approximately 8 hours of in-home care per day. In April 2010, DES/DDD concluded that Michael qualified for a Level 2 medical rate, which authorized DES/DDD to provide Michael with 8 hours per day of nursing care and 12 hours per day of attendant care. The Lundergans responded that even Level 2 care was insufficient. They seek in-home skilled nursing services on a one-to-one basis for 24-hours per day and seven-days per week.

The Lundergans sought an expedited appeal through the DDD's Office of Compliance and Review, but the request was denied. Although DES/DDD later determined that Michael qualified for a Level 3 service rate, which is the highest level of home or community based services ("HCBS") provided, the Lundergans still requested one-to-one 24-hour in-home care seven-days per week. The request was denied because it was not cost-effective or federally-reimbursable. The Lundergans sought an expedited state fair hearing pursuant to Arizona Administrative Code R9-34-219. The request for the expedited fair hearing was denied. The administrative review process is ongoing, with a hearing set for July 27. According to the parties, the administrative hearing will focus on several issues: (1) whether it is medically necessary for Michael to receive 24-hour per day, seven-day per week HCBS services, (2)

- 3 -

1  where such services are available, (3) whether such services are cost effective, and (4) whether such services are federally reimbursable.

Michael still receives in-home skilled nursing care for 24-hour per day and seven-days per week. Only fifteen hours per day, however, are funded by the state. The Lundergans fund the remaining nine hours.

The Lundergans raise two claims in the present action: (1) violation of Title XIX of the Social Security Act ("Medicaid Act"), 42 U.S.C. § 1396, *et seq.*, and (2) violation of 42 U.S.C. § 1983. This Court previously denied Plaintiffs' request for a TRO without prejudice. (Doc. 15). Plaintiffs again request a TRO, and the Court again finds that Plaintiffs have not met the standard for granting a TRO or a preliminary injunction.

**ANALYSIS**

**I.    Medicaid Act Claim**

Based on the *Colorado River* doctrine, it is proper for the Court to stay this matter pending a consideration on the merits through the state administrative process. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Courts consider multiple factors in deciding whether to stay a case on *Colorado River* grounds. These factors include, "(1) whether the state court was the first to assume jurisdiction over a property; (2) the relative inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction . . . (5) whether federal law provides the rule of decision on the merits; and (6) whether the state court proceeding can adequately address the rights of the federal plaintiff . . . (7) whether the exercise of jurisdiction would encourage forum-shopping." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1155 (9th Cir. 2007).

Here, these factors weigh in favor of staying the action. A pending state administrative proceeding is ongoing, in which the Lundergans seek the same relief (24-hour HCBS for Michael) as they seek here. Applying the factors, the first two factors do not weigh heavily in favor of either the state or federal forums. As the state administrative process began first and appears to address the same issues brought here, however, staying

this action would avoid piecemeal litigation, the risk of inconsistent results, and the potential for forum-shopping through seeking relief in federal court only after losing at one phase of the state administrative process. With respect to the remaining factors, the decision to stay depends largely on whether the key issues before the Court are appropriately resolved through the state administrative process. An examination of the critical issues reveals that a federal-court ruling on the merits is inappropriate at this time.

Plaintiffs contend that Defendants violated the Medicaid Act, 42 U.S.C. § 1396, *et seq.*, which governs federal grants to states for medical assistance programs. According to Plaintiffs, Michael has been offered insufficient medical funding by DES/DDD, the entities that distribute to him state-funded services for which he is eligible under Arizona's Medicaid system—the Arizona Health Care Cost Containment System ("AHCCCS"). Specifically, Plaintiffs argue that Michael is entitled to receive 24-hour in-home nursing care.

Under the Medicaid Act, the federal government provides matching funds to states to pay for state programs providing medical assistance to qualified recipients. *Callen v. Rogers*, 216 Ariz. 499, 502–03, 168 P.3d 907, 910–11 (Ct. App. 2007) (citing 42 U.S.C. § 1396 *et seq.*). A state Medicaid program must provide certain mandatory categories of "medical assistance" under the Medicaid Act, while other categories of medical assistance are optional. *See* 42 U.S.C. § 1396a(a)(10) (listing medical assistance that a state plan must provide); 42 C.F.R. § 440.225 (providing that a state may provide other services that are not mandatory).

The coverage requested here is for HCBS, which are optional under the Medicaid Act, as they are not listed as mandatory under 42 U.S.C. § 1396a(a)(10) or 42 C.F.R. § 440.210. HCBS include case management services, homemaker services, home health aide services, personal care services, adult day health services, habilitation services, respite care services, day treatment, and other services requested by the agency and approved by the Health Care Financing Administration as cost effective and necessary to avoid institutionalization. 42 C.F.R. § 440.180(b)(1)-(9). While Plaintiffs assert that "nurse practitioner services," "nursing facility services," and services for "qualified severely impaired individuals"

1 generally are required under the Medicaid Act, Plaintiffs offer no persuasive argument that
2 it is requesting nursing services as they are defined in the Medicaid Act and implementing
3 regulations. To the contrary, Plaintiffs appear to be seeking HCBS.

4 While a state need not offer optional services, "[o]nce a state chooses to offer such
5 optional services it is bound to act in compliance with the Act and the applicable regulations
6 in the implementation of those services." *Weaver v. Reagen*, 886 F.2d 194, 197 (8th Cir.
7 1989). In this case, Arizona received federal government approval to offer HCBS at an
8 amount "that does not exceed the cost of providing care to the eligible individual in an
9 institutional setting." (The Demonstration Project, *available at*
10 http://azahcccs.gov/reporting/Downloads/AZ1115Waiver_6-22-09.pdf). This limitation thus
11 allows the state to cap the benefits Michael can receive at the cost it would take to provide
12 him with care in an institutional setting. Therefore, the issue of whether the Medicaid Act
13 and its implementing regulations require Defendants to provide Michael with 24-hour HCBS
14 may depend, at least in part, on (1) whether 24-hour per day, seven-day per week HCBS is
15 medically necessary for Michael, (2) what the cost of providing such care is, (3) what the
16 cost and availability of institutional settings are, and (4) whether the HCBS care Plaintiffs
17 request exceeds the cost of available institutional care. Only then could the Court determine
18 whether the Medicaid Act requires Defendants to provide Michael with 24-hour per day,
19 seven-day per week HCBS. At a status conference held on July 22, 2010, the parties
20 appeared to agree that these issues would be considered in the administrative hearing.
21 Plaintiffs do not explain why Michael's benefits should not be capped at an amount that does
22 "not exceed the cost of providing care to [him] in an institutional setting." (The
23 Demonstration Project). Therefore, the critical issues regarding the Medicaid Act claim in
24 this Court and the key issues in the state administrative proceedings are the same, and
25 because the remaining *Colorado River* factors weigh in favor of staying this action, the Court
26 will order a stay with respect to the Medicaid Act claim only. Therefore, it is appropriate for
27 the Court to stay this action under *Colorado River* pending resolution of those issues in state
28

1 court.[3]

## II. Section 1983 Claim

Plaintiffs also allege a claim based on 42 U.S.C. § 1983, which provides a cause of action for a plaintiff who was deprived of a right secured by the Constitution or laws of the United States by those acting under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (citing 42 U.S.C. § 1983). The Complaint does not explain what, if any, federal rights were violated. The Complaint's conclusory language is insufficient to state a claim under *Iqbal*, 129 S.Ct. at 1949 and *Twombly*, 550 U.S. at 556.[4]

Plaintiffs' Motion for TRO incorrectly contends that Defendants violated Michael's due process rights. "[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Because the only basis for Plaintiffs' due process claim seems to be that Defendants did not provide governmental medical aid to support Michael's life, the Section 1983 claim fails unless an exception to this general rule applies.

Two exceptions to this rule exist. *Estate of Amos ex rel. Amos v. City of Page*, 257 F.3d 1086, 1090 (9th Cir. 2001). First, "the 'special relationship' exception states that when the State takes a person into its custody and holds him there against his will, the Constitution

---

[3] To the extent the Lundergans' briefs could be interpreted to argue that the Medicaid Act, on its face, inescapably requires Defendants to provide Michael any medical care the Lundergans contend is medically necessary, it appears that Plaintiffs' counsel acknowledged during the status conference that the key threshold issue is whether the care is required under the Demonstration Project. Thus, at this time, the Court need not address this argument. The Court notes, however, that "Medicaid programs do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs." *Alexander v. Choate*, 469 U.S. 287, 303 (1985).

[4] While, in certain circumstances, a party may be able to bring a Section 1983 claim to recover HCBS services under the Medicaid Act, Plaintiffs do not explain how they have pled such a claim. *See Ball v. Rodgers*, 492 F.3d 1094, 1107–08 (9th Cir. 2007).

- 7 -

imposes some responsibility for that person's safety and general well-being." *Id.* at 1090 (citing *Huffman v. County of L.A.*, 147 F.3d 1054, 1058 (9th Cir.1998)) (internal quotations and alterations omitted). "[T]he 'special relationship' exception generally is restricted to incarcerated prisoners and involuntarily committed mental health patients." *Doe v. City of Phoenix*, 2009 WL 4282275 at *5 (D. Ariz. Nov. 25, 2009). Neither the Complaint nor Plaintiffs' briefs explain how Michael was in the state's custody simply because he sought AHCCCS benefits. Instead, the facts indicate that Michael was in the Lundergans' custody. Plaintiffs offer no authority that the provision of benefits, without more, creates the type of special relationship necessary to sustain a § 1983 claim.

The second exception is the "danger creation" exception, which applies "where the state affirmatively places the plaintiff in a dangerous situation." *Estate of Amos*, 257 F.3d at 1091 (citing *Huffman*, 147 F.3d at 1059). Although Plaintiffs' allege that Defendants declined to provide Michael with Medicaid services, Plaintiffs allege no facts that Defendants *affirmatively* placed Michael in danger. Plaintiffs, therefore, have failed even to raise serious questions regarding the merits of their Section 1983 claim. As the Section 1983 claim lacks merit, the claim is dismissed without prejudice.

**IT IS THEREFORE ORDERED** that Plaintiffs' Amended Motion for Temporary Restraining Order and Stay of Administrative Decision (Doc. 17) and Defendants' Motion to Dismiss (Doc. 11) are **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss is **GRANTED** without prejudice with respect to Plaintiffs' claim under 42 U.S.C. § 1983 and **DENIED** without prejudice with respect to the Medicaid Act claim.

**IT IS FURTHER ORDERED** that this action is **STAYED** pending the completion of state administrative proceedings.[5]

---

[5] The Court, of course, will not provide a collateral appeal in addition to that provided by Arizona law. The Court will be reluctant to lift the stay barring a showing that the state administrative proceeding in some way did not permit the Lundergans to adequately address the federal issues underlying the Medicaid Act claim.

**IT IS FURTHER ORDERED** directing Plaintiffs' counsel to file a Status Report on or before **October 25, 2010**, and every 90 days thereafter until the stay is lifted.

DATED this 26th day of July, 2010.

*G. Murray Snow*
G. Murray Snow
United States District Judge